IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DELTA ELECTRONICS (SHANGHAI) CO., LTD., | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| VICOR CORPORATION, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Delta Electronics (Shanghai) Co., Ltd. ("Delta") files this complaint for patent infringement against Defendant Vicor Corporation ("Vicor"), and in support thereof alleges as follows:

**Nature of the Action**

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, specifically including 35 U.S.C. § 271.

2.      The Delta family of companies ("Delta Group") is a global leader in the design, development, manufacture, and sale of power electronics, including power management solutions such as power converters, which are needed to power high-end electronic devices like data center servers. Founded more than 50 years ago, the Delta Group has achieved great financial success due to its unmatched technical innovation and its ability to offer high-performance products that are used in a wide variety of electronic devices. The Delta Group's mission is to provide innovative, clean, and energy-efficient solutions for a better tomorrow. To continue to innovate and to protect its investments, the Delta Group has obtained a series of patents covering its power electronics, including its power converters, modules, and systems.

3.     Vicor competes directly against Delta in the power supply and power converter markets, including by offering products that are designed for the same applications as Delta's products.

4.     Vicor has infringed and continues to infringe Delta's U.S. Patent No. 10,845,853 ("the '853 Patent"), a Delta patent directed to an innovative system of providing power to a microchip mounted on a computer mainboard.  Vicor has infringed and continues to infringe the '853 Patent at least by making, using, selling, and/or offering to sell infringing products in the United States, and/or importing infringing products into the United States, and/or exporting products especially made for use in an infringing device, and by contributing to and/or inducing others to make, use, sell, offer to sell, or import into the United States products that implement Vicor's products in an infringing manner.

### The Parties

5.     Delta is a corporation organized and existing under the laws of the People's Republic of China, with a principal place of business at No. 182 Minyu Road, Pudong Shanghai, P.R.C. 201209.

6.     Upon information and belief, Vicor is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 25 Frontage Road, Andover, Massachusetts 01810.

### Jurisdiction and Venue

7.     This Court has subject matter jurisdiction over this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.     Vicor resides in this judicial district by virtue of being incorporated in the State of Delaware.  Accordingly, this Court may properly exercise personal jurisdiction over Vicor.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and/or 1400(b) at least because Vicor resides in this judicial district by virtue of being incorporated in the State of Delaware.

## The Patent-in-Suit

10.      The '853 Patent, which is titled "System of Providing Power to Chip on Mainboard," was issued by the U.S. Patent and Trademark Office ("USPTO") on November 24, 2020. A true and correct copy of the '853 Patent is attached as Exhibit 1.

11.      Delta is the owner by assignment of the entire right, title, and interest in and to the '853 Patent, including the sole and undivided right to sue for infringement and the sole and undivided right to recover damages for any past or future infringement.

12.      The '853 Patent is valid and enforceable.

13.      Vicor is not licensed to practice the '853 Patent.

## Factual Background

14.      The Delta Group was founded in 1971 by Bruce Cheng in Xinzhuang Town, Taipei County, Taiwan.

15.      Since its founding, the Delta Group has grown to become a global leader in the development and manufacturing of power and thermal management solutions.  As an industry leader, the Delta Group invests significant resources to continuously optimize and improve not only the performance of its products, but also their efficiency.  Reaching a more sustainable future through more capable and efficient power components is one of the Delta Group's key goals.

16.      The Delta Group's research and development have paid off.  The Delta Group offers some of the most innovative and energy-efficient power products in the electronics industry, including DC to DC converters with efficiency over 90%.

17.     Delta has been awarded numerous U.S. and international patents for the electronic components it has developed, in recognition of Delta's groundbreaking research and innovation. The '853 Patent is just one example of Delta's work on the forefront of power converter design.

18.     The '853 Patent describes an innovative two-stage power delivery system in which a preceding-stage power supply converts a DC input voltage to an intermediate bus voltage, and at least two post-stage power supplies, positioned on different sides of the chip and closer to it than the preceding-stage power supply, where each post-stage power supply independently steps the bus voltage down further to supply power to the chip.   One advantage of the '853 Patent over prior art power delivery systems is a significant reduction in transmission impedance between the post-stage power supplies and the chip, with shortened distribution length, and the parallel combination of at least two distributed post-stage power supply paths yielding reduced transmission impedance compared to the single post-stage power supply arrangement found in prior art systems, thereby reducing distribution loss and voltage fluctuation at the chip under dynamic load conditions.

19.     Upon information and belief, Vicor has been aware of the '853 Patent since at or near the time the patent issued on November 24, 2020, but at least since July 2023.

20.     Vicor competes directly against Delta in the power supply and power converter markets, including by offering products that are designed for the same applications as Delta's products.   As a direct competitor of Delta in the power electronics industry, Vicor routinely monitors Delta's patent portfolio in order to evaluate competitive risks, assess the freedom to operate its own products, and identify potential patent-based claims or defenses.  Upon information and belief, Vicor has maintained an active and ongoing program of monitoring Delta's patent

- 4 -

filings and issued patents as part of its standard competitive intelligence and patent risk management practices.

21.    The '853 Patent claims priority to Chinese Patent Appl. No. 201810103774.5, filed on February 1, 2018, and was issued by the USPTO on November 24, 2020.  Upon information and belief, the underlying Chinese priority application was published in 2018, and the corresponding U.S. patent application was published on August 1, 2019.  Vicor's ongoing monitoring of Delta's patent portfolio would have caused Vicor to have been aware of the '853 Patent's issuance at or near the time the '853 Patent issued in November 2020.

22.    Delta and Vicor have been engaged in extensive patent litigation spanning multiple forums over multiple years, all involving patents directed to power conversion and power distribution technologies — the same field of technology to which the '853 Patent relates. This extensive litigation history required Vicor to repeatedly investigate Delta's patent portfolio, and upon information and belief, Vicor acquired actual knowledge of the '853 Patent through those investigations.

23.    In July 2023, Vicor filed a complaint with the U.S. International Trade Commission ("ITC") that led to the institution of ITC Investigation No. 337-TA-1370, captioned *Certain Power Converter Modules and Computing Systems Containing the Same*, asserting Delta's infringement of U.S. Patent Nos. 10,199,950 ("Power Distribution Architecture with Series-Connected Bus Converter"), 9,166,481 ("Digital Control of Resonant Power Converters"), and 9,516,761 ("Encapsulated Modular Power Converter with Symmetric Heat Distribution").  Simultaneously, in July 2023, Vicor filed a patent infringement suit against Delta and related companies in the U.S. District Court for the Eastern District of Texas, Civil Action No. 2:23-cv-00323, asserting the same patents along with U.S. Patent No. 6,930,893 ("Factorized Power Architecture with Point of Load

Sine Amplitude Converters").   Upon information and belief, in preparing and filing these complaints, Vicor and its counsel investigated Delta's patent portfolio — including Delta's patents covering competing power conversion technologies — in order to assess the risk of potential counterclaims or retaliatory patent assertions by Delta. The '853 Patent, which relates to the same or substantially similar field of technology that was at issue in those litigations, would have been identified and analyzed in the course of any such investigation.

24.     In October 2023, Delta filed a patent infringement suit against Vicor in the U.S. District Court for the Western District of Texas, Civil Action No. 6:23-cv-00726, asserting U.S. Patent No. 9,819,263 ("Power Converter and Method for Manufacturing the Same").  In November 2023, Delta filed a separate patent infringement suit against Vicor in this Court, Civil Action No. 1:23-cv-01246 (JLH), asserting U.S. Patent Nos. 10,877,534 ("Power Supply Apparatus") and 8,711,580 ("Resonant Conversion System with Over-Current Protection Processes").   Upon information and belief, in defending those actions and assessing Delta's litigation strategy, Vicor and its counsel investigated Delta's patent portfolio — including an assessment of which other Delta patents might be asserted against Vicor's products — that would have included analysis of the '853 Patent.

25.     On January 12, 2026, Vicor filed a complaint with the ITC that led to the institution of ITC Investigation No. 337-TA-1484, captioned *Certain Power Converters, Circuit Board Assemblies, and Computing Systems Containing the Same*, asserting U.S. Patent No. 12,395,087 ("Power Distribution Architecture with Series-Connected Bus Converter"), which covers high-density, high-efficiency power converters and related circuit board assemblies used in AI servers, data centers, and advanced computing systems, with Delta named as one of several respondents. On January 9, 2026, Vicor filed a parallel patent infringement suit against Delta in the U.S. District

Court for the Eastern District of Texas, Civil Action No. 2:26-cv-00017, asserting the same patent and alleging infringement based on Delta's power converter modules and related assemblies used in computing systems.

26. Vicor's U.S. Patent No. 12,395,087 is directed to a power distribution architecture using series-connected bus converters — a multi-stage power conversion approach for delivering power in high-density computing environments. The '853 Patent asserted here similarly describes and claims a multi-stage power delivery architecture. Indeed, the specifications of both patents teach that the technology described therein may be used to supply power to processors and application specific integrated circuits (ASIC), such as central processing units (CPU) and graphics processing units (GPU). The technical subject matter of U.S. Patent No. 12,395,087 therefore has significant overlap with the technical subject matter of the '853 Patent. Upon information and belief, in conducting its pre-suit investigation for the January 2026 ITC and district court litigations, Vicor and its counsel assessed the risk of Delta asserting counterclaims based on Delta's own patent portfolio covering the same or substantially similar power delivery and power conversion technologies, and in doing so identified and analyzed the '853 Patent.

27. In sum, between July 2023 and January 2026, Vicor and Delta were involved in numerous patent disputes — including ITC investigations, district court infringement actions, and related *inter partes* review proceedings — all involving patents directed to power conversion technologies in the same or substantially similar fields of technology as the '853 Patent asserted here. Upon information and belief, based on the sheer volume and nature of the patent investigation activities that Vicor would have been required to conduct in connection with prosecution and defending those litigations, as well as its active patent monitoring program, particularly for a known, active competitor such as Delta, with whom it was involved in multiple

litigations in multiple forums, Vicor must have become aware of and analyzed the '853 Patent at least as of July 2023.

28.     To the extent Vicor denies having had prior knowledge of the '853 Patent, contrary to the facts alleged herein, Vicor has been aware of the patent and its infringement thereof no later than the time of service of this complaint.

**Vicor's Infringement**

29.     Vicor has directly and indirectly infringed, and continues to directly and indirectly infringe, one or more claims of the '853 Patent, including at least claim 1, by making, using, offering for sale, and/or selling in the United States, and/or importing into or exporting from the United States, products that infringe the '853 Patent (hereinafter, "Vicor Accused Products"), and by contributing to and inducing others to do the same, including Vicor's downstream customers.

30.     The Vicor Accused Products are material components of two-stage power delivery systems that satisfy all the limitations of at least claim 1 of the '853 Patent.  For example, Vicor designs and manufactures products such as current multipliers and pre-regulator modules in the United States that Vicor and its customers combine to create infringing two-stage power delivery systems. The infringing power delivery systems have application in many types of devices designed and manufactured by Vicor's customers, including power supplies for servers.

31.     Attached hereto as Exhibit 2 is a claim chart showing how an exemplary Vicor Accused Product, the VTM$^{TM}$ Current Multiplier (Model No. VTM48EF012T130C01), is used in combination with a Vicor PRM$^{TM}$ Module comprising a high-power buck-boost regulator, to create a power delivery system that satisfies the limitations of claim 1 of the '853 Patent.  Attached hereto as Exhibit 3 is Vicor's datasheet for the VTM$^{TM}$ Current Multiplier, which is available on Vicor's website (vicorpower.com).  Attached hereto as Exhibit 4 is Vicor's description of its family of VI

Chip® PRM$^{TM}$ Modules, including links to all PRM datasheets, which is also available on Vicor's website.  The contents of Exhibits 2-4 are incorporated herein by reference.

32.     Vicor actively encourages and instructs its customers to use the Vicor Accused Products to create power delivery systems that include the innovative architecture covered by the '853 Patent.  For example, Exhibit 5 is a Vicor article titled "Vertical power delivery enables cutting-edge processing" that describes a "lateral power delivery" architecture that adopts Delta's patented technology.  The contents of Exhibit 5 are incorporated herein by reference.

33.     The identification of exemplary Vicor Accused Products herein, as well as the claim chart at Exhibit 2, is preliminary in nature and is provided without prejudice to Delta's right to assert additional and/or different claims of the '853 Patent against these or any other Vicor Accused Products.  Upon information and belief, Vicor designs and manufactures other current multiplier, buck converter, and buck-boost converter products with designs like those of the above-identified exemplary Vicor Accused Products, many or all of which use Delta's patented technology when combined into a two-stage power delivery system.

34.     According to public filings Vicor has made with the Securities and Exchange Commission (SEC), Vicor manufactures the Vicor Accused Products in the United States, at its manufacturing facility in Andover, Massachusetts.

35.     According to public filings Vicor has made with the SEC, Vicor sells Vicor Accused Products both directly through its own salesforce and website, as well as indirectly through a network of independent sales representatives and at least four distributors: Arrow Electronics, Inc., Digi-Key Corporation, Avnet Electronics, and Mouser Electronics, Inc.

36.     The Vicor Accused Products are available for direct purchase on Vicor's website (vicorpower.com).

37.     Vicor maintains sales offices in the United States to sell Vicor Accused Products. For example, according to public filings Vicor has made with the SEC, Vicor sells Vicor Accused Products through offices in Massachusetts, Illinois, and California.

38.     Upon information and belief, Vicor combines the Accused Products into test boards and demonstration boards that directly infringe the '853 Patent and provides such test and demonstration boards to customers in the U.S. for evaluation as part of its sales activities.

39.     Upon information and belief, Vicor tests the Vicor Accused Products in the U.S. in test configurations that directly infringe the '853 Patent.

40.     Vicor also assists its customers with the design of products to integrate Vicor Accused Products into their products, including in the United States.  Vicor Field Application Engineers (FAEs) based in the United States provide direct technical support to Vicor's customers both in the United States and abroad, and Vicor Product Development Engineers (PDEs) located at Vicor's headquarters in Massachusetts further support Vicor's FAEs and customers.

41.     Further, in concert with its authorized distributors and customers, Vicor causes or induces infringing products to be made, used, offered for sale, or sold within the United States, or imported into the United States.

42.     Upon information and belief, in concert with contract manufacturers, suppliers, and/or assembly facilities overseas, Vicor exports material components of products that practice the claimed invention, which components are especially made or especially adapted for the use in a manner that infringes the '853 Patent.

43.     Upon information and belief, Vicor actively induces the combination of such exported components into products that practice inventions claimed in the '853 Patent, and/or knowingly exports one or more components that practice Delta's patented invention, intending

those components to be combined in a manner that would infringe the '853 Patent if combined as such in the United States.

44.    Specifically, Vicor has designed and manufactured, and continues to design and manufacture, material components of power delivery systems that practice the '853 Patent. The Vicor Accused Products include, as non-limiting examples, the specific products identified in Exhibits 3 and 4.

### Count I – Infringement of U.S. Patent No. 10,845,853

45.    Delta incorporates by reference the allegations in Paragraphs 1 through 44 above and the exhibits discussed in those paragraphs as if fully set forth herein.

46.    The following allegations are based on publicly available information and a reasonable investigation of the structure and operation of the Vicor Accused Products. Delta reserves the right to amend its infringement allegations to the fullest extent permitted under law or any order of this Court, including, for example, based on information about the Vicor Accused Products that Delta obtains through discovery in this action.

47.    Vicor has directly infringed one or more claims of the '853 Patent, including claim 1, in violation of 35 U.S.C. § 271(a). As alleged above and as illustrated in the claim chart attached as Exhibit 2, the Vicor Accused Products, including the exemplary products described in Exhibits 3 and 4, can be combined in a manner that satisfies every limitation of one or more claims of the '853 Patent, including claim 1. Upon information and belief, Vicor has made, used, and/or sold in the United States test/demonstration/evaluation boards that implement the Vicor Accused Products in two-stage power delivery systems that infringe the '853 Patent. Upon information and belief, Vicor has conducted internal testing in the United States of the Vicor Accused Products implemented in two-stage power delivery systems that infringe the '853 Patent.

48.     As alleged above, the products charted in Exhibit 2 are merely intended to be exemplary of the Vicor Accused Products.

49.     Vicor has induced infringement of one or more claims of the '853 Patent, including claim 1, by its customers in violation of 35 U.S.C. § 271(b).  Specifically, Vicor understands, intends, and encourages its customers to incorporate the Vicor Accused Products into infringing downstream electronic products developed by Vicor's customers, such as computer servers.  Vicor sells the Vicor Accused Products to customers, either directly or indirectly, knowing and intending that the Vicor Accused Products will be implemented in an infringing manner as described in Vicor's datasheets and articles, including those attached hereto as Exhibits 3-5.  Further, Vicor actively encourages such infringement by using its datasheets and other technical and marketing materials to inform downstream customers how to implement the Vicor Accused Products into their products in an infringing manner.  Vicor collaborates directly with its customers to help them develop products that infringe with full knowledge of such infringement. On information and belief, Vicor also sells or otherwise supplies evaluation boards that implement the Vicor Accused Products in an infringing manner, and Vicor sells or otherwise supplies those boards both to customers within the U.S. for evaluation for potential implementation in downstream products, as well as to customers outside the U.S., such as foreign manufacturers, thereby inducing the customers to use the same infringing system designs. At least some of Vicor's customers' products, like servers, are manufactured outside the U.S. and then imported into the U.S. and/or sold throughout the U.S. by Vicor's downstream customers and their retailers.

50.     Vicor has contributed to infringement of one or more claim of the '853 Patent, including claim 1, by its customers in violation of 35 U.S.C. § 271(c).  Specifically, the Vicor Accused Products constitute a material part of the inventions claimed in the '853 Patent.  Vicor

- 12 -

sells the Vicor Accused Products to customers in the United States knowing that they are especially made or especially adapted for use in a manner that infringes the '853 Patent. The Vicor Accused Products are not staple articles of commerce suitable for substantial non-infringing use because the datasheets and other technical and marketing materials created by Vicor for those products confirm they are specifically designed to be implemented in a downstream device in an infringing manner.

51. The Vicor Accused Products are substantial components of two-stage power delivery systems covered by the '853 Patent. Vicor has infringed one or more claims of the '853 Patent, including claim 1, in violation of 35 U.S.C. § 271(f)(1) by supplying or causing the Vicor Accused Products to be supplied in or from the United States in such manner as to actively induce their combination outside the United States in a manner that would infringe the patent if that combination occurred within the United States. As alleged above, Vicor actively encourages such combinations by using its datasheets and other technical and marketing materials to inform customers how to implement the Vicor Accused Products to create infringing power delivery systems.

52. Vicor has infringed one or more claims of the '853 Patent, including claim 1, in violation of 35 U.S.C. 271(f)(2) by supplying or causing the Vicor Accused Products to be supplied in or from the United States knowing that they are especially made or especially adapted for use in a manner that infringes the '853 Patent and are not staple articles of commerce suitable for substantial non-infringing use, and intending that they be combined outside the United States in a manner that would infringe the patent if such combination occurred within the United States.

53.    Vicor's infringement of the '853 Patent has damaged and continues to damage Delta in an amount yet to be fully determined, but in any event at least equal to a reasonable royalty for Vicor's unauthorized use of Delta's patented technology.

54.    Because of Vicor's infringement of the '853 Patent, Delta has suffered and will continue to suffer irreparable harm and injury, for example, in the form of lost customers and/or lost market share.  Unless enjoined by this Court, Vicor and/or others acting on Vicor's behalf will continue infringing the '853 Patent, thereby causing additional irreparable injury to Delta, for which there is no adequate remedy at law.  Specifically, Vicor's actions will irreparably harm Delta's standing in the power converter market by causing Delta to lose customers and market share and depriving Delta of the goodwill that should flow to it as the innovator and sole source of the patented technology that Vicor is effectively now claiming as its own.

55.    On information and belief, Vicor's infringement of the '853 Patent has been willful, done deliberately and with full knowledge that the manufacture, use, sale, offer for sale, and/or importation, and/or export of the Vicor Accused Products infringes the '853 Patent, justifying an increase in the damages awarded Delta up to three times the amount found or assessed, in accordance with 35 U.S.C. § 284.

56.    Vicor's willful infringement of the '853 Patent also renders this case exceptional, justifying an award to Delta of its reasonable attorney fees in accordance with 35 U.S.C. § 285.

### Prayer for Relief

WHEREFORE, Delta prays for judgment in its favor granting the following relief:

A.    A finding that Vicor has directly infringed, induced others to infringe, and/or contributorily infringed the '853 Patent in violation of 35 U.S.C. §§ 271(a)-(c) and (f)(1)-(f)(2);

B.    An order, pursuant to 35 U.S.C. § 283, that Vicor and all its affiliates, employees, agents, officers, directors, attorneys, successors, and assigns, and all those acting on behalf of or

- 14 -

in active concert or participation with any of them, be enjoined from: (1) infringing the '853 Patent, (2) making, using, selling, and offering for sale in the United States, or importing into the United States, the Vicor Accused Products, and (3) exporting the Vicor Accused Products from the United States for  combination outside the United States;

      C.      An award of damages pursuant to 35 U.S.C. § 284 adequate to compensate Delta for Vicor's infringement of the '853 Patent, including both pre- and post-judgment interest, and costs as fixed by the Court;

      D.      A finding that Vicor's infringement of the '853 Patent has been willful;

      E.      An increase in the damages awarded to Delta of three times the amount found by the jury or assessed by the Court;

      F.      A declaration that this is an exceptional case within the meaning of 35 U.S.C. § 285, and a corresponding award of Delta's reasonable attorney fees incurred in connection with the litigation;

      G.      In the absence of injunctive relief, an order establishing an ongoing royalty, in an amount to be determined by the Court, for any future infringement of the '853 Patent by Vicor, including because of continuing sales of any products found to infringe and/or sales of any materially similar products; and

      H.      Any additional and further relief the Court may deem just and proper under the circumstances.

## Jury Demand

Pursuant to Federal Rule of Civil Procedure 38(b) and District of Delaware Local Rule 38.1, Delta hereby demands a trial by jury on all issues so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Of Counsel:

Mark Supko
CROWELL & MORING LLP
600 Fifth Street NW
Washington, DC 20001
(202) 624-2500

Yuezhong Feng
Gang Chen
CROWELL & MORING LLP
300 N. LaSalle Drive, Suite 2500
Chicago, IL 60654
(312) 321-4200

July 24, 2026

*/s/ Karen Jacobs*

---

Karen Jacobs (#2881)
Brian P. Egan (#6227)
J. Layne Lancaster (#7616)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
kjacobs@morrisnichols.com
began@morrisnichols.com
llancaster@morrisnichols.com

*Attorneys for Delta Electronics (Shanghai)
Co., Ltd.*